UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY TANELL CHAPMAN,

    Petitioner,

                                  CASE NO. 05-CV-74591-DT
v.                           JUDGE NANCY G. EDMUNDS
                                  MAGISTRATE JUDGE PAUL J. KOMIVES

BLAINE LAFLER,

    Respondent.
_____/

**REPORT AND RECOMMENDATION**

*Table of Contents*

I.    RECOMMENDATION .................................................................. 1
II.   REPORT ................................................................................... 1
    A.   *Procedural History* ............................................................ 1
    B.   *Factual Background Underlying Petitioner's Convictions* ............... 3
    C.   *Procedural Default* ........................................................... 4
    D.   *Standard of Review* ......................................................... 5
    E.   *Joinder of Charges (Claim I)* ............................................... 7
        1.   *Clearly Established Law* ............................................ 7
        2.   *Analysis* ............................................................... 8
    F.   *Absence of Transcript (Claim II)* .......................................... 9
        1.   *Clearly Established Law* ........................................... 10
        2.   *Analysis* ............................................................. 10
    G.   *Conclusion* .................................................................. 13
III.  NOTICE TO PARTIES REGARDING OBJECTIONS ......................... 13

\*    \*    \*    \*    \*

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.   REPORT:

A.   *Procedural History*

    1.    Petitioner Anthony Tanell Chapman is a state prisoner, currently confined at the St. Louis Correctional Facility in St. Louis, Michigan.

2.     In March 2003, petitioner was convicted of second degree murder, MICH. COMP. LAWS § 750.317; carrying a concealed weapon, MICH. COMP. LAWS § 750.227; possession of a firearm by a convicted felon, MICH. COMP. LAWS § 750.224f; second-degree fleeing and eluding, MICH. COMP. LAWS § 750.479a, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Genesee County Circuit Court. On April 15, 2003, he was sentenced as an habitual offender, third offense, MICH. COMP. LAWS § 769.11, to concurrent terms of 56-90 years' imprisonment on the murder conviction, 5-10 years' imprisonment on the concealed weapons conviction, 5-10 years' imprisonment on the felon-in-possession conviction, and 79 months' to 10 years' imprisonment on the fleeing and eluding conviction. Petitioner was also sentenced to a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.   THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS BY JOINING THE MURDER CHARGE FOR TRIAL WITH THE CHARGES ARISING FROM THE POLICE CHASE AND CRASH, WHERE THE NATURE OF THE CHARGES RESULTED IN UNFAIR PREJUDICE.

II.  DUE PROCESS REQUIRES A NEW TRIAL OR AT LEAST A REMAND TO SETTLE THE RECORD WHERE THE TRIAL COURT'S VIDEOTAPE SYSTEM DID NOT RECORD SIGNIFICANT PORTIONS OF THE TRIAL, INCLUDING THE CLOSING ARGUMENTS, JURY INSTRUCTIONS, AND PROCEEDINGS AFTER THE JURORS HAD REPORTED BEING DEADLOCKED.

Petitioner also filed a motion to remand in order to settle the record. This motion was granted by the court of appeals, and following an evidentiary hearing the trial court certified a stipulated supplemental statement of facts. Upon the return of the case to the court of appeals, the court found

no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Chapman*, No. 248291 (Mich. Ct. App. Jan. 22, 2004) (per curiam).

    4.    Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Chapman*, 474 Mich. 854, 702 N.W.2d 578 (2005).

    5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on December 5, 2005. As grounds for the writ of habeas corpus, he raises the two claims that he raised in the state courts.

    6.    Respondent filed his answer on June 16, 2006. He contends that petitioner's first claim is without merit, and that petitioner's second claim is barred by petitioner's procedural default.

B.    *Factual Background Underlying Petitioner's Convictions*

The factual background leading to petitioner's convictions was summarized by the Michigan Court of Appeals:

> Defendant's convictions arose from two drive-by shootings, one resulting in the death of Marcus Wright, and a subsequent police chase resulting in a four-car accident. Defendant and Mr. Wright were members of rival gangs who sold drugs at locations in close proximity in the city of Flint. On May 14, 2002, defendant drove past Mr. Wright's home several times. At approximately 5:00 p.m., defendant drove by again with George and Robert Hodges. Mr. Wright was across the street from his home, outside a party store making a drug transaction. George Hodges began shooting from the front passenger window. One bullet fatally wounded Mr. Wright in the back.
> 
> The members of Mr. Wright's family remained at the hospital until the early morning hours of May 15. Sometime between 1:00 and 2:00 a.m., defendant drove by in a white Impala with Kevin Brown. One of the men opened fire on the Wright home. After receiving notice that a white Impala had been involved in a drive-by shooting, police officers began following defendant near the scene. When the officers attempted to effectuate a stop, defendant led them on a high-speed chase at over one hundred miles an hour. The chase ended when defendant rear-ended another vehicle and caused a four-car accident. Defendant and Mr. Brown were pulled from their burning vehicle. Officers found a loaded Tech-Nine pistol in the

>back seat, matching casings found at the May 15 shooting scene. They also found a black revolver on the ground about twenty feet from the car.

*Chapman*, slip op. at 2 (footnotes omitted).

C. *Procedural Default*

Respondent first contends that petitioner's second claim is barred by petitioner's procedural default in the state courts, because petitioner failed to object to the trial court's deadlock jury instruction claim at the time it was given. The Court should disagree.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Here, it is true that defense counsel did not object to the trial court's deadlock jury instruction at the time it was given. However, petitioner's habeas claim is not that he was denied a fair trial by the court's deadlock jury instruction. Rather, his habeas claim is that he is entitled to

4

a new trial based on the absence of a transcript. It is true that petitioner's claim depends on a showing of prejudice, and his identified prejudice is the allegedly improper deadlock instruction. His actual habeas claim, however, presents a separate and distinct constitutional issue from the jury instruction claim *simpliciter*. And it is clear that petitioner properly presented his missing transcript claim in each level of state court review. Thus, the Court should conclude that petitioner's claim is not procedurally defaulted.

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

5

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not

require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.      *Joinder of Charges (Claim I)*

Petitioner first claims that he was denied a fair trial when the murder charge stemming form the shooting death of Wright was joined with the remaining charges, relating to a separate shooting. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

"[C]onsolidation in one lawsuit of all issues arising out of a single transaction or occurrence best promotes justice, economy, and convenience." *Ashe v. Swenson*, 397 U.S. 436, 454 (1970) (Brennan, J., concurring). Joinder "has long been recognized as a constitutionally acceptable accommodation of the defendant's right to a fair trial." *Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir. 1993). Thus, as the Supreme Court has explained, "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986). To establish the requisite prejudice a habeas petitioner must "go beyond the potential for prejudice and prove that *actual* prejudice resulted from the events

7

as they unfolded during the joint trial." *Herring*, 11 F.3d at 377-78 (emphasis in original); *see also*, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). "Such prejudice may arise when there is a great disparity in the amount of evidence supporting the charges or when the jury is likely to confuse the evidence or infer a criminal disposition on the part of the defendant." *Webber v. Scott*, 390 F.3d 1169, 1178 (10th Cir. 2004). The inquiry should focus on "cross-admissibility of evidence and the danger of 'spillover' from one charge to another, especially where one charge or set of charges is weaker than another." *Davis*, 384 F.3d at 638.

2. *Analysis*

The Michigan Court of Appeals rejected petitioner's claim that the joinder of the charges was improper. The court explained that joinder was proper because the acts were part of a single scheme or plan, based on the evidence showing that "on two separate occasions in a nine-hour period, defendant drove two separate vehicles past the Wright home. Shots were fired from those vehicles. Bullet casings from the scene of the second shooting matched a weapon found in the vehicle involved in defendant's fleeing and eluding charges." *Chapman*, slip op. at 3. The court also concluded that joinder was proper because "[t]he evidence pertaining to each of the charges would have been admissible in the other trials [and] [t]he witnesses in each trial would have been the same." *Id*. (footnote omitted). The Court should conclude that this determination was reasonable.

As explained above, petitioner is entitled to habeas relief on this claim only if the joinder of the charges denied him a fair trial by actually prejudicing him on one of the charges. The state court's determination that the charges were related is a factual finding that is presumed correct on habeas review. *See Wharton-El v. Nix,* 38 F. 3d 372, 375 (8th Cir. 1994) (state appellate court's determination that for severance purposes two robberies were part of a common scheme or plan was

8

presumed correct on habeas review). *See generally* 28 U.S.C. § 2254(e)(1) (factual findings are presumed correct unless rebutted by clear and convincing evidence).  While it is true that the evidence on the murder charge was somewhat weaker than the evidence on the other charges, there was no danger of unfair prejudice here because, as the court of appeals found, even if there were separate trials the evidence of petitioner's fleeing and possession of weapons would have been admissible in the murder trial, as these facts were relevant to showing consciousness of guilt and premeditation. *See Chapman*, slip op. at 3 & n.17.  In these circumstances, where the evidence was cross-admissible and there was no risk of juror confusion, petitioner cannot show he was denied a fair trial by the joinder of the charges.  *See Webber*, 390 F.3d at 1178; *Davis*, 384 F.3d at 639; *United States v. Jacobs,* 244 F. 3d 503, 507 (6th Cir. 2001); *Wharton-El*, 38 F. 3d at 374-75. Further, although the jury instructions were not transcribed, the settlement of the record indicates that the jury was given Michigan Criminal Jury Instruction (2d) 3.20.  *See* Pet'r's Exs., Ex. M, Stipulation & Order to Settle Record on Appeal, at 2 & Appx. B.  This instruction informs a jury that, when a defendant is charged with multiple crimes, the jury must "consider each crime separately in light of all the evidence in the case." MICHIGAN CRIMINAL JURY INSTRUCTIONS (2D) § 3.20. Thus, "any prejudice was further limited through an instruction directing the jury to consider each count separately."  *Davis*, 384 F.3d at 639 (citing *Lane*, 474 U.S. at 450 n.13); *see also*, *Wharton-El*, 38 F.3d at 375.

For these reasons, the Court should conclude that the Michigan Court of Appeals's determination regarding petitioner's joinder claim was reasonable.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this ground.

F.      *Absence of Transcript (Claim II)*

9

Petitioner also contends that he was denied a fair trial by the absence of a transcript reflecting the trial court's further instruction to the jury when it reported that it was deadlocked. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.   *Clearly Established Law*

Although a state must afford an indigent criminal defendant a record of sufficient completeness to permit proper review of his claims on appeal, a "'record of sufficient completeness' does not translate automatically into a complete verbatim transcript." *Mayer v. City of Chicago,* 404 U.S. 189, 194 (1971). Therefore, a state may find other means to afford adequate and effective appellate review to indigent defendants, such as an agreed statement of facts, a full narrative statement based on a court reporter's notes or a judge's notes, or a bystander's bill of exceptions. *See id.* Thus, a reconstructed record, as opposed to a verbatim transcript, can be sufficient to accord effective appellate review to a criminal defendant, especially where state appellate rules establish a procedure for reconstruction of the trial record. *See Morgan v. Massey,* 526 F. 2d 347, 348 (5th Cir. 1976). The Sixth Circuit has held that "federal habeas relief based on a missing transcript will only be granted where the petitioner can show prejudice." *Scott v. Elo*, 302 F. 3d 598, 604 (6th Cir. 2002) (citing *Bransford v. Brown*, 806 F. 2d 83, 86 (6th Cir. 1986)). Although the Sixth Circuit has recognized the difficulty in demonstrating prejudice where the transcripts are missing, a habeas petitioner must nonetheless "present something more than gross speculation that the transcripts were requisite to a fair appeal." *Bransford,* 806 F. 2d at 86.

2.   *Analysis*

After trial, it became apparent that a portion of the trial, including closing arguments, jury instructions, and the trial court's deadlock jury instruction, were not recorded due to a malfunction

in the video recording system. Petitioner therefore moved to settle the record, and the trial court held an evidentiary hearing to do so. With respect to the deadlock jury instruction issue,[1] defense counsel testified at the hearing:

> I do not believe he gave the standard instruction. My recollection is that what he told them was that they should rely on their collective memories, they should continue to deliberate and to see, to respect one another, words to that effect, one another's opinions, and to see if they could arrive at a decision. I don't recall the standard instruction being given.

Hr'g Tr., dated 2/19/04, at 19. When asked specifically whether the trial court had instructed the jurors that they should not give up their own beliefs merely to reach a verdict, counsel answered: "I don't recall." *Id*. Counsel also indicated that she did not object to the instruction at the time it was given. *See id*. at 19-20. The prosecutor, however, testified that "my recall is he read the deadlock jury instruction pretty much, you know, by the book[.]" Hr'g Tr., dated 2/26/04, at 38. He testified that the instruction was the standard instruction "in its neutral and objective form" and that there was no objection to the instruction at the time it was given. *Id*. The trial judge concluded that he had given the standard deadlock instruction, explaining:

> On the deadlock instruction Ms. Lazzio testified that she said that the Court gave the deadlock instruction, but she didn't think it was the standard CJI, she said she did not object and the Court wants to assert that it did give the standard jury instruction. If she thinks it's [sic] was not the standard I would suggest it's because when I give the jury instructions I try to not use a monotone as most judges do, I try to be folksy and understandable when I read the words, and it my [sic] have sound–sounded different to her because then I–I was not reading them in a monotone, but I did read them word for word.

*Id*. at 40.

On appeal, the Michigan Court of Appeals rejected petitioner's claim, concluding that

---

[1]Although the closing arguments and complete instructions were not transcribed, petitioner's claim of prejudice relates only to the deadlock jury instruction.

petitioner could not show prejudice because the settled record established that the standard jury instruction was given:

> [D]efense counsel conceded that there was no objection to the deadlocked jury instruction as given at trial. The prosecutor asserted that the court read the standard jury instruction and the trial court's notes indicated that the standard instruction was given verbatim on March 19, 2003, at 12:40 p.m. Further, defendant signed the stipulation conceding that the statement of facts was an accurate representation of the trial transcripts. The settled statement of facts is deemed to represent an "accurate, fair, and complete statement of the proceedings" and any doubts should be resolved in favor of the regularity of the lower court proceedings.

*Chapman*, slip op. at 4-5 (footnotes omitted) (quoting MICH. CT. R. 7.210(B)(2)(c)). The Court should conclude that petitioner is not entitled to habeas relief on this claim.

As noted above, to be entitled to relief on this claim petitioner must show that he was prejudiced by the failure to transcribe the proceedings. Petitioner does not contend that Michigan's standard deadlock jury instruction, *see* MICHIGAN CRIMINAL JURY INSTRUCTIONS (2D) § 3.12, is improper or denies a defendant a fair trial. Thus, to establish prejudice here, petitioner must show that the trial court gave something other than the Michigan standard deadlock jury instruction. This he cannot do. The trial court's factual finding that it gave the standard jury instruction is a factual determination entitled to deference on habeas review. *See Garcia v. Fischer*, No. 02 Civ. 819, 2004 WL 26556, at *8 (S.D.N.Y. Jan. 5, 2004). Thus, the trial court's determination that it read the standard deadlock instruction is presumed correct unless rebutted by clear and convincing evidence, *see* 28 U.S.C. § 2254(e)(1), and petitioner is entitled to habeas relief only if he can show that the resolution of this factual issue was unreasonable in light of the evidence presented, *see* 28 U.S.C. § 2254(d)(2).

Here, petitioner has offered nothing to show that the trial court's determination was incorrect or unreasonable in light of the facts presented. Although petitioner's counsel testified that she did

not think that the court had given the standard instruction, both the prosecutor and the trial judge thought that the court had. Indeed, the trial judge was unequivocal in stating that he had read the standard deadlock instruction. The conclusion that he did so is buttressed by the fact that trial counsel concededly did not object to the instruction at the time it was given. Petitioner has pointed to no evidence apart from his trial counsel's testimony, which was considered and rejected by the trial judge, to show that the trial court's conclusion on this factual issue was incorrect or unreasonable. Thus, this Court must conclude that the trial court did, in fact, give the standard deadlock jury instruction. And, because petitioner does not claim that the standard instruction is improper, he cannot show that he was prejudiced by the absence of a complete transcript. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.     *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will

not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 12/8/06

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on December 8, 2006.
>
> s/Eddrey Butts
> Case Manager